FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2011 JAN 25 PM 1:39

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OCCIDENTAL CHEMICAL CORPORATION | * | CIVIL ACTION |
| | * | |
| Versus | * | NO.: 11-159 |
| | * | |
| TAMINI TRANSFORMERS USA, LLC and | * | |
| TAMINI TRASFORMATORI, s.r.l. | * | SECTION SECT. C MAG. 1 |
| | * | MAG. DIVISION: |
| | * | |

## COMPLAINT

Plaintiff Occidental Chemical Corporation ("OCC") respectfully represents as follows:

## PARTIES

### 1.

OCC is a corporation incorporated under the laws of the State of New York, which maintains its principal place of business in the State of Texas, and is licensed to do and does business in the State of Louisiana.

Fee 350
Process
X Dktd
CtRmDep
Doc. No.

**2.**

Made defendants herein are:

a)      Tamini Transformers USA, LLC, an Illinois limited liability company, which maintains its principal place of business in Oak Brook, Illinois ("Tamini- USA"); and

b)      Tamini Trasformatori s.r.l., a corporation organized under the laws of the Republic of Italy, which maintains its principal place of business in Milan, Italy ("Tamini- Italy").

## JURISDICTION AND VENUE

**3.**

Jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity between the plaintiff and the defendants, and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

**4.**

Venue is appropriate in the Eastern District of Louisiana under 28 USC ¶1391(a)(2) because jurisdiction is founded only on diversity of citizenship and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District.

## GENERAL ALLEGATIONS

**5.**

Defendants Tamini-USA and Tamini-Italy are part of the same "Tamini Group" enterprise that manufactures power and industrial transformers and sells these transformers in North America, including the United States, and other industrialized markets.   As used herein, "Tamini" refers collectively to both of these entities.

2

**6.**

On or about September 11, 2007, OCC and Tamini-USA executed Purchase Order No. 4501144956 (the "Purchase Order"). A true and correct copy of the Purchase Order is attached hereto as Exhibit "A."

**7.**

In the Purchase Order, the parties did not waive the implied warranty against redhibitory defects.

**8.**

The cause of the Purchase Order was the sale by Tamini-USA to OCC of a 55MVA@65C transformer manufactured by Tamini, together with appurtenant parts and the required oil, for OCC's Taft, Louisiana, plant (the "transformer"), all as further described in the Purchase Order.

**9.**

The transformer was designed and manufactured by Tamini-Italy at one of its transformer production facilities.

**10.**

The transformer was delivered to OCC's Taft, Louisiana, plant in March of 2009. After assembly and testing, the transformer was energized for the first time on November 17, 2009.

**11.**

A representative of Tamini was on-site at OCC's Taft, Louisiana, plant during assembly, and approved the assembly and commissioning data and authorized the initial energizing of the transformer.

**12.**

In December 2009, the transformer showed signs of latent or hidden defects. Specifically, it tripped off line due to the operation of the transformer sudden pressure relay. OCC notified Tamini that the transformer was showing evidence of defective performance and provided Tamini an opportunity to investigate the transformer and correct the defect.

**13.**

Tamini instructed OCC to perform specific tests and analysis on the transformer, and OCC performed such tests and analysis and provided all results to Tamini. A Tamini employee traveled to the Taft plant to assist in and oversee certain inspections. Tamini instructed OCC to replace the sudden pressure relay and to re-energize the transformer. The transformer was energized and restarted on Tamini's instruction without incident and appeared to operate without any visible signs of defect.

**14.**

On January 31, 2010, the transformer failed catastrophically, resulting in a rupture of the transformer tank and subsequent fire in and around the transformer.

**15.**

The failure of the transformer was caused by latent and/or hidden defects in design or manufacturing defects in materials or workmanship, which defects were present at the time of delivery of the transformer (the "defects"), which defects include, but are not limited to, a design or manufacturing defect in the wiring insulation system or an error during the assembly of the transformer during manufacture that created a deficiency in the wiring insulation system. Upon information and belief, after due investigation, the insulation failure led to a phase to phase electrical short circuit and arcing fault, that in turn caused the tank rupture, oil spill, and fire.

**16.**

Said defects manifested themselves by causing the transformer to fail to perform in the intended manner during normal use, resulting in a total and catastrophic failure of the transformer, including the rupture of the transformer's tank, the release of part of the transformer's oil charge, and the engulfment of the transformer in fire, with burning both inside and outside the transformer tank.

**17.**

OCC deployed an emergency response team to fight the fire. The local fire departments also responded to fight the fire, and those departments requested additional assistance in the form of a foam truck and additional emergency personnel from a nearby manufacturer, The Dow Chemical Company. It took approximately five hours from inception to suppress the fire and secure the scene.

**18.**

The rupture of the transformer tank resulted in the discharge of thousands of gallons of transformer oil, some of which impacted the ground surface outside of the transformer containment. OCC removed and disposed of oil-contaminated soil and rock pursuant to the requirements of applicable environmental law.

**19.**

The transformer failure and fire caused significant damage to OCC's equipment and buildings situated near the transformer, the platform supporting the transformer, and the cables and electrical devised attached to the transformer.

**20.**

OCC notified Tamini of the transformer's failure and requested that Tamini provide a replacement transformer.

**21.**

Tamini acknowledged that a circuit in the transformer was defective and agreed to provide a replacement transformer.

**22.**

OCC also requested that Tamini reimburse OCC for the damages and pecuniary losses that OCC incurred that were caused by the transformer's catastrophic failure and fire, as well as those damages and pecuniary losses that were ancillary to the installation of the replacement transformer, including, without limitation: the costs and expenses of emergency response and environmental remediation; costs for repairs to or replacement of buildings, equipment and materials attached or adjacent to the failed transformer; delivery, materials and installation costs associated with the installation of the replacement transformer; and engineering expenses associated with the demolition of the failed transformer and reinstallation of the replacement transformer and related equipment.

**23.**

Tamini has to date refused to compensate OCC for the damages and pecuniary losses caused by the catastrophic failure of the transformer and fire, including, without limitation the costs for installation of the replacement transformer, the emergency response and environmental remediation, and the repair, replacement and installation of related buildings, equipment and materials.

**24.**

As a result of the defective nature of the transformer, OCC has been compelled to hire counsel and has incurred and will incur reasonable attorneys' fees.

**25.**

The failure of the transformer is the result of defects in the transformer that rendered the transformer useless such that it must be presumed that OCC would not have purchased the transformer had it known of such defects at the time of the purchase of the transformer from Tamini.

**26.**

Tamini, as the manufacturer and seller of the transformer, is deemed as a matter of law to know of any redhibitory defects in the transformer.

**JURY DEMAND**

**27.**

Plaintiff OCC demands a trial by jury.

**DEMAND FOR RELIEF**

**28.**

OCC is entitled to, and demands, compensation for damages and pecuniary losses caused by the failure of the transformer, including, without limitation, damages to and costs for repairs to or replacement of its buildings, equipment and materials, costs and expenses of responding to the fire, costs and expenses of environmental remediation, costs and expenses for delivery and installation of a replacement transformer, and engineering costs and expenses associated with the demolition of the failed transformer and installation of a replacement transformer and related equipment.  OCC is also entitled to, and demands, an award for attorneys' fees, judicial interest

7

from the date of judicial demand on damages and pecuniary losses and from the date of judgment on attorneys' fees, and an adjudication that the defendants are liable for payment of costs, expert witnesses to be used at trial, and all other expenses of trial.

**WHEREFORE,** OCC prays that:

(1)    After due proceedings are had, there be judgment in favor of OCC and against Tamini-USA and Tamini-Italy for all damages sustained, together with legal interest, attorneys' fees and costs;

(2)    After due proceedings are had, there be judgment in favor of OCC and against Tamini-USA and Tamini-Italy for all other legal and/or equitable relief to which it may be entitled.

**Respectfully submitted,**

**CURRY & FRIEND, PLC**

BY:   _____
**CHRISTOFFER C. FRIEND #1888**
**MICHAEL M. NOONAN #1506**
**SUSAN R. LAPORTE #19671**
**228 St. Charles Avenue**
**1200 Whitney National Bank Building**
**New Orleans, Louisiana 70130**
**Telephone:  [504] 524-8556**

**Counsel for Occidental Chemical Corporation**

8